**Dorothy M. ALEXANDER, Appellant,**

v.

**Walter T. JOHNSON; Jane G. Greenlee; Joy J. Johnson; Wymene Valand; Henry W. Oxedine; James Woodward, Appellees.**

**No. 83–6672.**

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1984.

Decided Aug. 17, 1984.

Rehearing and Rehearing In Banc
Denied Sept. 24, 1984.

Marvin Sparrow, Durham, N.C. (Charles T.L. Anderson, Prisoner Legal Services, Inc., Apex, N.C., on brief), for appellant.

Jacob L. Safron, Sp. Deputy Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen. of N.C., Raleigh, N.C., on brief), for appellees.

Before WIDENER, SPROUSE and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

Dorothy M. Alexander appeals from the district court's dismissal of her civil rights action against members of the North Carolina Parole Commission and the Secretary

of the Department of Corrections. Alexander sued these state officers in their official capacities under 42 U.S.C. § 1983[1], contending that their practice of requiring selected indigent inmates to make restitution for the costs of court-appointed counsel as a condition of parole violated the constitutional standards established in *Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), and *James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972). Although she challenged the facial validity of some aspects of the state's restitution program, her principal claim was that the repayment requirement was unconstitutionally applied to her and other similarly-situated indigent inmates. In dismissing Alexander's suit, the district court upheld the facial constitutionality of the State of North Carolina's restitution program under the applicable standards of *Fuller* and *James,* and concluded that Alexander had produced no evidence demonstrating that the statutes had been misapplied in her case. We affirm both the district court's decision upholding the constitutionality of the North Carolina restitution program[2] and its order dismissing Alexander's claim that the program had been unconstitutionally applied to her. We do not agree with all of the district court's reasoning concerning the validity of North Carolina's restitution scheme as it was applied in this case, but affirm the court's

dismissal of Alexander's action because she has not exhausted state remedies available to her. She essentially challenges the lawfulness of the restraints placed on her freedom and thus her claim seeks relief more appropriately pursued through specific remedies available under 28 U.S.C. § 2254. *See Todd v. Baskerville,* 712 F.2d 70 (4th Cir.1983).

**I**

Alexander was indicted by a Franklin County grand jury on first-degree murder charges in December 1978. After the return of the indictment, she immediately requested and received court-appointed counsel under the provisions of North Carolina law guaranteeing an indigent person legal assistance when he or she is a defendant in a criminal proceeding.[3] N.C.GEN. STAT. § 7A–451(a)(1). She was tried before a jury on the murder charge in August 1979, found guilty of the lesser included offense of voluntary manslaughter, and sentenced to not less than ten nor more than twenty years in prison and fined $4,000. The sentencing court, in its commitment order, recommended to correction officials that Alexander be required to make restitution as a condition of her participation in any work-release or parole program administered through the department of corrections. The restitution recom-

---

1. Alexander sought formal certification as class representative of all inmates who had paid or will be forced to pay the costs of their court-appointed counsel as a condition of their parole or work release. The district court never ruled on the class certification issue because it believed Alexander failed to state a cognizable claim under 42 U.S.C. § 1983.

2. Though the district court was considering North Carolina's motion to dismiss for failure to state a claim, its ruling on the facial validity of the involved statutes is more appropriately regarded as a grant of summary judgment. The district court considered materials and evidence outside the pleadings, gave each side an opportunity for further submissions, and believed that no material factual issues were in dispute. FED.R.CIV.P. 12(b). As to Alexander's related claim that the procedures were misapplied to her, the district court's decision amounted to a regular Rule 12(b)(6) dismissal.

3. Indigents are entitled to court-appointed counsel under North Carolina law whenever they are involved in adversarial proceedings that jeopardize their liberty interests. An individual facing involuntary commitment for psychiatric treatment or parole revocation proceedings, for example, may petition the state for court-appointed counsel. N.C.GEN.STAT. § 7A–451. Legal assistance is extended unconditionally once indigency is established, although North Carolina, like many other jurisdictions, reserves to itself a general lien against the petitioner's future earnings should he later become able to pay. N.C. GEN.STAT. § 7A–455(b). The lien is perfected through independent civil proceedings and cannot be enforced unless the indigent had notice of, and the opportunity to participate in, the proceedings.

mended by the sentencing court involved paying the victim's family for the costs of his burial and reimbursing the state for the expenses it incurred in providing Alexander court-appointed counsel.[4] Approximately one month after Alexander was committed to the custody of state prison officials, her liability to repay the state for attorney's fees was reduced to judgment in the Franklin County Superior Court.[5]

Alexander's conviction and sentence were subsequently affirmed on appeal with one modification; she was freed of the obligation to pay the $4,000 fine because it was not authorized by North Carolina law. *State v. Alexander*, 47 N.C.App. 502, 267 S.E.2d 396 (1980). She apparently has never challenged the civil judgment against her for the costs of court-appointed counsel in any proceeding in state court.

In December 1981, barely sixteen months after her conviction, Alexander was removed from the general prison population

and placed in a work-release program. Her participation in the program was conditioned, among other things, upon her payment of $100 a month in restitution. The first $1,103 paid by Alexander under this program was to go to the family of the victim for funeral expenses. The next $2,026 was to be paid to the State of North Carolina for the costs of providing court-appointed counsel.

Alexander was enrolled in the work-release program until the spring of 1982, at which time she became eligible for parole. She was informed during this period that the parole commission intended to follow the sentencing court's original recommendations by conditioning her parole upon the continuation of her restitution payments to the victim's family and the state. She also was notified of her right to challenge these conditions of parole through an administrative hearing process within the department of corrections if she so chose.[6] Rather

---

4. In cases in which an active prison sentence is imposed, such as Alexander's, the sentencing court's restitution recommendations are not binding on prison authorities. *See* N.C.GEN. STAT. §§ 148–57.1(b), 148–33.2(b). *See also* 5 N.C.Adm.Code § 2E.1101(e). If rehabilitative considerations at the time of work release or parole eligibility indicate the recommended restitution conditions serve no useful purpose, correction officials must notify the sentencing court that its proposed conditions of parole have been rejected. *See* 5 N.C.Adm.Code § 2E.1101(f)(6)(B). In reaching their decision on this issue, correctional officials are required to give the inmate the opportunity to be heard. 5 N.C.Adm.Code § 2E.1102(1). They also are empowered to consider the inmate's indigency in determining whether conditions relating to restitution are appropriate criteria for his release on work release or parole. *State v. Lambert*, 252 S.E.2d 855, 857 (N.C.App.1979). *See also State v. Parton*, 277 S.E.2d 410, 422–23 (N.C.1981).

5. The state assumes the status of a judgment lien creditor against the assets of an indigent defendant who has accepted court-appointed counsel and been found guilty of the offense. N.C.GEN.STAT. § 7A–455(b) and (c). The lien is not valid unless the indigent defendant was given both notice of the state claim and the opportunity to resist its perfection in a hearing before the trial court. *See State v. Crews*, 284 N.C. 427, 201 S.E.2d 840, 849 (1974). *See also State v. Stafford*, 45 N.C.App. 297, 262 S.E.2d 695, 697 (1980). The lien is collectable through

normal civil debt recovery procedures, but those assets and wages of the indigent necessary for his own or his family's support and existence are not subject to garnishment or attachment. *See* N.C.GEN.STAT. §§ 1–362, 1C–1601. Nor can the indigent be subjected to imprisonment because of his inability to pay. N.C. CONST. Art. I, § 28. The practical effect of these provisions is that an indigent receiving court-appointed counsel will never be required to repay the state unless he becomes financially able. *Cf. Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642.

6. The "Notice of Entitlement to a Restitution Hearing" fully explained Alexander's right under state law to seek administrative relief from the parole conditions she now characterizes as oppressive and coercive:

The Parole Commission wishes to advise you at this time that it is our intention to implement the order/recommendation of the sentencing judge as a condition of your parole in the event parole is granted.

This is to notify you that you are entitled to a hearing in this matter to express your views on whether or not this order/recommendation should be implemented. At the hearing you will be allowed to state any reasons you think appropriate to convince the Parole Commission that it should not implement the order/recommendation. In the event you have been paying restitution while on work release, the amount already paid will be credited against the total amount to be paid. In the

than pursue this option, Alexander executed a waiver of her right to an administrative hearing and accepted parole under the specified conditions. Soon after her release as a parolee, she filed this § 1983 action in federal district court against officials of the department of corrections and the parole commission on behalf of herself and all indigent North Carolina inmates who had repaid, or will be forced to repay, the costs of court-appointed counsel as a condition of work-release or parole.[7] She alleged that the North Carolina practice of requiring an indigent defendant to repay attorney's fees as a condition of parole violated the due process and equal protection clauses of the fourteenth amendment, as well as North Carolina state law. In her prayer for relief, Alexander sought the return of all funds previously withheld from indigents under the allegedly unlawful work-release and parole procedures, a declaratory judgment invalidating the state's restitution scheme as applied by the Department of Corrections, and an injunction releasing her and all others from the attorney's fees repayment condition of parole.

The State of North Carolina answered Alexander's § 1983 suit by moving to dismiss the action. It based its motion on the qualified immunity of the named defendants, the facial constitutional validity of the state's statutes and practices relating to repaying attorneys fees, and the purported failure of Alexander to demonstrate a cognizable constitutional injury or to state a claim upon which relief could be granted. The district court referred this dismissal motion, together with Alexander's countermotions for summary judgment and class certification, to a federal magistrate for review and a proposed disposition. *See* 28 U.S.C. § 636(b)(1)(B). After completing an examination of the applicable case law, statutory provisions, and the parties' evidentiary submissions, the magistrate recommended dismissing all of Alexander's claims except her contention that the North Carolina procedures violated the equal protection clause. He noted that language in the North Carolina Administrative Code indicated correction officials may not have considered Alexander's financial status in determining whether restitution was a viable condition of parole. He believed that the exclusion of such a consideration when determining whether an inmate must repay the state for appointed counsel fees violated the Supreme Court's decision in *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642. Accordingly, he recommended that Alexander be allowed to develop the factual basis of her equal protection claim.

Both parties filed timely objections to the magistrate's report. After completing the required review, the district court adopted all parts of the magistrate's report except his recommendation concerning the viability of Alexander's equal protection claim. The district court ruled that, contrary to the magistrate's conclusion, department of corrections procedures do not prohibit any consideration of the prisoner's financial status in parole decisions, and ordered Alexander's entire suit dismissed. On appeal, Alexander's principal contention is that the North Carolina parole provisions relating to repayment of attorney's fees violate well-established constitutional standards both facially and as applied.

## II

■ Alexander suggests that the issues in this appeal can be resolved on a non-constitutional basis. *Cf. Ashwander v. TVA*, 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80

---

event the decision is to grant parole, you will be advised of your balance at that time. You are further advised that you have the right to discharge your restitution obligation by paying the entire amount in full at any time prior to parole or while on parole. This hearing, if requested, will be held within thirty (30) days. The notice was explained to her by a parole officer in a personal interview, after which she executed a written waiver of her right to appear at a restitution hearing.

7. By agreement of the parties, Alexander has continued to pay $100 a month into an escrow account pending the outcome of this suit. No parole revocation proceedings have been instituted against her by the state.

L.Ed. 688 (1936) (Brandeis, J., dissenting). She contends that the statutes and procedures governing North Carolina's restitution program simply do not authorize correction officials to condition an inmate's parole upon the repayment of expenses incurred in providing her court-appointed counsel. She argues that correction officials have usurped power they do not lawfully possess under the North Carolina restitution program. We disagree and first treat that contention.

The sentencing court and correction officials ordered Alexander to repay the costs of her court-appointed counsel under the provisions of North Carolina General Statutes sections 148–33.2 and 148–57.1. These provisions expressly authorize correction officials to impose restitution as a condition of participation in work release or parole programs. They leave the ultimate decision concerning restitution to the discretion of correction officials, but that discretion is far from unbridled. Direct procedural and substantive guidance is provided concerning how and under what circumstances the restitution decision is to be made. Above all else, the statutes direct that the restitution requirement imposed by correction officials must advance the state's interest in rehabilitating the criminal defendant and cannot be used as a punitive measure. *See, e.g.,* N.C.GEN.STAT. § 148–57.1.

Consistent with this overriding directive, the State of North Carolina only requires the parolee or work release participant to repay an "aggrieved party" for injuries suffered as a direct result of the defendant's criminal episode. N.C.GEN.STAT. §§ 148–33.2, 148–57.1 (incorporating the applicable provisions of N.C.GEN.STAT. § 15A–1343(d)). In a related passage in its restitution statutes, the North Carolina legislature has included "government agencies, whether federal, State or local" in its definition of an "aggrieved party". N.C. GEN.STAT. § 15A–1343(d). This definition, however, also contains an important proviso limiting the inmate's restitution obligations to particular and definite expenses not related to the government agency's normal operating costs. *See, e.g., Ev-*

*ans v. Garrison,* 657 F.2d 64, 66 (4th Cir. 1981). Alexander attempts to bring the parole condition requiring her to repay the state for the costs of providing her a defense lawyer within the coverage of this proviso. She argues, in essence, that the cost of providing court-appointed counsel is a normal operating expense of government, thus precluding the state from claiming the status of an "aggrieved party" under the restitution statute's own definition of that term.

. Although the North Carolina Supreme Court has never definitively decided the issue, we believe there is persuasive authority in North Carolina law supporting the state's right to claim the status of an "aggrieved party" for the expenses associated with providing court-appointed counsel. In *Shore v. Edmisten,* 290 N.C. 628, 227 S.E.2d 553, 559 (1976), for example, the North Carolina Supreme Court, in discussing the very issue now raised by Alexander, observed:

A state or a local agency can be the recipient of restitution where the offense charged results in particular damage or loss to it over and above its normal operating costs. It would be reasonable, for example, to require a defendant to pay the state for expenses incurred to provide him with court appointed counsel should he ever become financially able to pay. *Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974). It would not however be reasonable to require the defendant to pay the state's overhead attributable to the normal costs of prosecuting him (citations omitted) (emphasis supplied).

The underscored language, though dictum in the context in which it was written, provides important guidance concerning the construction federal courts should give to the "aggrieved party" language of the North Carolina restitution statutes.

More direct guidance can be found in *State v. Killian,* 37 N.C.App. 234, 245 S.E.2d 812, 816 (1978). There, the North Carolina Court of Appeals expressly held

that the parole commission may require an inmate to reimburse the state for the costs of attorney's fees pursuant to its statutory authority to order restitution to aggrieved parties. *Killian's* controlling force on the restitution issue was bolstered recently by a state supreme court decision expressly approving of its reasoning. *See State v. Parton,* 277 S.E.2d 410, 422–23 (N.C.1981). Moreover, *Killian's* conclusion that paying court-appointed attorney's fees is not a normal cost of government is reinforced by the provision of North Carolina law granting the state a general lien against the defendant's future assets. N.C.GEN.STAT. § 7A–455(b). The normal operating costs of government are usually funded by tax revenues, rather than by the creation of a general lien against the beneficiary of a particular government program.

In view of these interpretations of the "aggrieved party" language by North Carolina courts thoroughly schooled in their own law, we simply are unable, sitting as a federal tribunal construing the same provision, to say that these state tribunals have misread the language and intent of the North Carolina legislature when it enacted N.C.GEN.STAT. §§ 15A–1374(b) (11a), 15A–1343(d), 148-33.2, 148-57.1. *Cf. National Surety Corp. v. Midland Bank,* 551 F.2d 21 (3d Cir.1977); 19 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4507.

## III

Having disposed of the non-constitutional basis for a decision in this appeal, we turn our attention to the validity of North Caro-

lina's program of conditioning parole upon the repayment of attorneys fees. Our inquiry proceeds on two fronts: First, we must determine whether the interlocking statutes comprising the North Carolina restitution program facially violate either the due process or equal protection clauses of the fourteenth amendment.[8] Second, we must decide whether, in any event, Alexander has stated a cognizable constitutional claim that those procedures have been misapplied in her case to produce an impermissible result. We travel a well-marked path as we address these questions. *See Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642; *James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600.

### A.

North Carolina, like every jurisdiction, has an irrevocable constitutional duty to provide court-appointed counsel to an indigent defendant once he requests it. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The developing jurisprudence in this area, however, does not require the state to absorb the expenses of providing such counsel when the defendant has acquired the financial ability to pay. *Fuller v. Oregon,* 417 U.S. at 51–54, 94 S.Ct. at 2123–2125. Nor is North Carolina barred from structuring a program to collect the amount it is owed from a financially-able defendant through reasonable and fairly administered procedures. *Id.* The state's initiatives in this area naturally must be narrowly drawn to avoid either chilling the indigent's exercise of the right to counsel, or creating discrimi-

---

**8.** Traditional principles of equal protection and due process converge in cases such as this. *Bearden v. Georgia,* 461 U.S. 660, ——, 103 S.Ct. 2064, 2068, 76 L.Ed.2d 221, 228 (1983). Whether we analyze the North Carolina program for its class-based neutrality or fundamental fairness, the constitutionality of the program can only be determined by careful scrutiny of such factors as "the nature of the individual interest affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose...." *Id.* 461 U.S. at ——, 103 S.Ct. at 2069, 76 L.Ed.2d at 229 (quoting *Williams v. Illinois,* 399 U.S. 235, 260, 90 S.Ct. 2018, 2031, 26

L.Ed.2d 586 (1970)). Fortunately, detailed discussion of these factors is not necessary in the case we consider, for the Supreme Court has articulated the specific criteria a state's recoupment or restitution program must meet to survive a facial constitutional challenge on either due process or equal protection grounds. *See Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642; *James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600. The state's legitimate interests in formulating such a program are beyond dispute. Our focus, then, is to determine whether the program is narrowly drawn to minimize the burdens on the defendant's rights.

nating terms of repayment based solely on the defendant's poverty. *See Fuller v. Oregon,* 417 U.S. at 47–54, 94 S.Ct. at 2121–2125; *James v. Strange,* 407 U.S. at 135–39, 92 S.Ct. at 2031–34; *Olson v. James,* 603 F.2d 150, 153–55 (10th Cir.1979). Beyond these threshold requirements, however, the state has wide latitude to shape its attorneys fees recoupment or restitution program along the lines it deems most appropriate for achieving lawful state objectives.

Although there is no single model to which all state repayment programs must conform, the Supreme Court has carefully identified the basic features separating a constitutionally acceptable recoupment or restitution program from one that is fatally defective. *See Fuller v. Oregon,* 417 U.S. at 47–54, 94 S.Ct. at 2121–2125; *James v. Strange,* 407 U.S. at 135–39, 92 S.Ct. at 2031–34. *See also Bearden v. Georgia,* 461 U.S. 660, 76 L.Ed.2d 221, 76 L.Ed.2d 221 (1983). In *James,* the first of the three decisions bearing on this question, the Supreme Court emphasized that the indigent accepting court-appointed counsel could not be subjected to more severe collection practices than other civil debtors without running afoul of the equal protection clause. In *Fuller,* decided two years later, the Court offered important clarifications of the developing law in this area by upholding an Oregon reimbursement plan that required an indigent to repay court-appointed counsel fees as a condition of probation. The Oregon approach, the Court explained, contained none of the invidious collection practices condemned in *James,* provided an array of procedural and substantive safeguards designed to preserve the indigent's basic right to counsel, and authorized reimbursement from the defendant only when he could afford to pay without substantial hardship. Finally, in *Bearden,* decided nearly a decade later, the Court added a new gloss to the general jurisprudence in this area by ruling that an inmate violating

any monetary requirement of his probation or restitution regimen cannot be imprisoned if his non-compliance results from poverty alone.[9]

■ From the Supreme Court's pronouncements in *James, Fuller,* and *Bearden,* five basic features of a constitutionally acceptable attorney's fees reimbursement program emerge. First, the program under all circumstances must guarantee the indigent defendant's fundamental right to counsel without cumbersome procedural obstacles designed to determine whether he is entitled to court-appointed representation. Second, the state's decision to impose the burden of repayment must not be made without providing him notice of the contemplated action and a meaningful opportunity to be heard. Third, the entity deciding whether to require repayment must take cognizance of the individual's resources, the other demands on his own and family's finances, and the hardships he or his family will endure if repayment is required. The purpose of this inquiry is to assure repayment is not required as long as he remains indigent. Fourth, the defendant accepting court-appointed counsel cannot be exposed to more severe collection practices than the ordinary civil debtor. Fifth, the indigent defendant ordered to repay his attorney's fees as a condition of work-release, parole, or probation cannot be imprisoned for failing to extinguish his debt as long as his default is attributable to his poverty, not his contumacy. *See, e.g., Olson v. James,* 603 F.2d at 153–55.

■ Though far from a paragon of clarity and detail as a complete program, the North Carolina statutes relating to the repayment of attorney's fees by restitution embody all the required features of a constitutionally acceptable approach. The indigent defendant's fundamental right to counsel is preserved under the North Carolina statute, N.C.GEN.STAT. § 7A–451(a)(1), and no preconditions are placed

**9.** *Bearden* would allow re-imprisonment if the state's interests in punishment could not be vindicated in any other way. This qualification, however, has no applicability to the North Carolina restitution program because the state has shaped its program to achieve rehabilitation objectives, not punishment objectives. N.C.GEN. STAT. §§ 148–57.1(c), 15A–1374.

on the exercise of that right beyond a reasonable and minimally intrusive procedure designed to establish the fact of indigency. Furthermore, like its civil recoupment statute [10], North Carolina's procedures for imposing the reimbursement of court-appointed counsel fees as a condition of parole are narrowly drawn to avoid unfairness and discriminatory effects. The presiding trial judge is entrusted with making the initial determination concerning the wisdom of requiring repayment. N.C. GEN.STAT. §§ 148–57.1(c), 15A–1374. His discretion in this area must be guided by rehabilitative considerations, not by a desire to punish or to collect a debt owed to the state. N.C.GEN.STAT. § 148–57.1(c). In deciding whether repayment is warranted, the trial judge "shall take into consideration the resources of the defendant, his ability to earn, his obligation to support dependents, and such other matters as shall pertain to his ability to make restitution." N.C.GEN.STAT. § 148–57.1, incorporating N.C.GEN.STAT. § 15A–1343(d). The amount of repayment recommended by the trial judge may never exceed the state's actual expenses, though he is free to recommend reduced or partial restitution when the actual debt outstrips the defendant's ability to pay. N.C.GEN.STAT. §§ 148–57.1, 15A–1343(d). Moreover, no matter what level of repayment is ultimately decided upon by the trial judge, the defendant has a right to be heard on the issue and to take a direct appeal of an adverse ruling.[11] *See, e.g., State v. Alexander,* 267 S.E.2d 396 (N.C.App.1980).

At the sentencing stage, the trial judge's initial recommendation to require repayment is not binding on correction officials. N.C.GEN.STAT. § 148–57.1(b). These officials are obligated to undertake an independent review of the recommendation when the inmate becomes eligible for parole to test its appropriateness to the inmate's current situation. During this review, the inmate is entitled to participate in the decision-making process and to bring to the attention of correction officials any information bearing on the proposed conditions of his parole. N.C.GEN.STAT. § 148–57.-1(d). The parole Commission's exercise of discretion in this matter is heavily influenced by the perceived rehabilitative advantages of having an inmate assume full responsibility for all the consequences of his misdeeds. This consideration, however, is not permitted to blind it to the manifest injustice of imposing a repayment condition on an inmate whose poverty makes compliance impossible. *See State v. Parton,* 277 S.E.2d at 423; *State v. Lambert,* 40 N.C. App. 418, 252 S.E.2d 855, 857 (1979). Not only are appropriate state remedies open to an inmate suffering such an injustice, *id.,* but the federal and state constitutions prohibit his reincarceration for violating a monetary term of his parole that indigency prevented him from fulfilling. *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76

---

**10.** North Carolina's program for civil recoupment of fees, though not directly attacked here, possesses the essential characteristics of the Oregon system upheld in *Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642. The legal obligation to repay the state for the costs of court-appointed counsel does not arise until after the defendant has been found guilty of the charged offense. N.C.GEN.STAT. § 7A–455(c). To enforce this obligation, the amount the defendant owes must be determined in an independent proceeding, reduced to judgment, N.C. GEN.STAT. § 7A–455(b); *State v. Crews,* 284 N.C. 427, 201 S.E.2d 840; *State v. Washington,* 51 N.C.App. 458, 276 S.E.2d 470, 471 (1981), and collected through the same procedures used by other judgment creditors. N.C.GEN.STAT. § 7A–455(b). Finally, the defendant is allowed to shelter a substantial portion of his assets from attachment if the state executes on its judgment, N.C.GEN.STAT. § 1C–1601, and to protect his wages from garnishment to the extent they are necessary for his and his family's support. N.C.GEN.STAT. § 1–362. The combined effect of these various civil collection protections is that the defendant will never be forced to repay the state for court-appointed counsel as long as he remains impoverished. *See, e.g., Fuller v. Oregon,* 417 U.S. at 44–47, 94 S.Ct. at 2120–2122.

**11.** The legal correctness of a decision to recommend repayment as a condition of parole is appealable at the time of conviction, but the constitutionality of any such repayment condition may not be challenged until repayment is actually incorporated as a term of parole. *See State v. Parton,* 277 S.E.2d at 422–23.

L.Ed.2d 221. *Cf. State v. Caudle,* 276 N.C. 550, 173 S.E.2d 778 (1970).

In summary, the interlocking statutes and court decisions that regulate North Carolina's ability to recover the costs of court-appointed counsel meet the facial constitutional requirements of *Fuller, Strange,* and *Bearden.* The indigent defendant's fundamental right to counsel is preserved under the system; he is given ample opportunity to challenge the decision to require repayment at all critical stages; and he is protected against heightened civil or criminal penalties based solely on his inability to pay.

### B.

There remains the issue of whether Alexander's alternative claim—that the restitution statute was unconstitutionally applied to her—is cognizable under § 1983. The district court answered this question in the negative, reasoning that Alexander could state no claim of constitutional injury unless or until her parole was actually revoked for not repaying her attorney's fees. It apparently believed Alexander must await a parole revocation proceeding before she could present her claim that personal poverty made compliance with this condition of parole impossible. *See Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221. We do not, however, consider this question since we must affirm the dismissal of her claim even if the district court's asserted Fed.R.Civ.P. 12(b)(6) grounds were erroneous.

■ We sustain the order dismissing Alexander's claim on an independent basis from that discussed by the district court—her failure to exhaust available state remedies. Ordinarily, a claim of constitutional injury cognizable under § 1983 is not subject to the exhaustion requirement. *McCray v. Burrell,* 516 F.2d 357 (4th Cir.), (*en banc*), *cert. granted,* 423 U.S. 923, 96 S.Ct. 264, 46 L.Ed.2d 249 (1975), *cert. dismissed* as improvidently granted, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976). An exception to this well-established rule, however, arises when an inmate challenges

the right of the state to detain her as opposed to the physical conditions under which she is held or some other aspect of the state's treatment of her while she is in confinement. *See Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Todd v. Baskerville,* 712 F.2d 70. In cases of this nature, we have recognized that the "core" dispute is one properly pursued through the specific remedy of habeas corpus, and that comity and federalism demand the claim first be presented to the state for resolution. *Todd v. Baskerville,* 712 F.2d at 72–73.

■ Here, Alexander's core complaint, though cast in § 1983 terms, is that North Carolina has placed an unconstitutional restraint on her freedom by conditioning her parole upon the repayment of attorney's fees. She seeks release from this restraint in the expectation that it will hasten the day when she will be able to rejoin the community at large on the same footing as a non-parolee. Her attack focuses not on the physical conditions of her detention but on the basic right of the state to condition her liberty on an allegedly oppressive and coercive economic criterion she is unable to meet. In tone and content, this is a claim manifestly cognizable in a habeas petition. *Preiser v. Rodriguez,* 411 U.S. at 489, 93 S.Ct. at 1836; *Todd v. Baskerville,* 712 F.2d at 72–73. *Cf. Evans v. Garrison,* 657 F.2d 64.

Alexander, though still in custody for the purposes of pursuing habeas relief, *see Jones v. Cunningham,* 371 U.S. 236, 239–44, 83 S.Ct. 373, 375–78, 9 L.Ed.2d 285 (1963), has not presented her claim of an unconstitutional restraint on her freedom to any court in North Carolina. Her presentation of this claim to a federal tribunal, therefore, was premature.

Accordingly, we uphold the district court's dismissal of her claim for personal relief on the independent basis of non-exhaustion. The dismissal of her claim is without prejudice, enabling her to reinstitute the action under the provisions of 28 U.S.C. § 2254 once she has satisfied the

exhaustion requirement by presenting her claim to appropriate state institutions.

AFFIRMED.