Darrel Ray LEONARD and Johnny A.
Casselbury, Appellants,

v.

L.T. HAMMOND, Jr. and William M. Nee-
ly, in their capacities as District Court
Judges of Randolph County, Appellees.

North Carolina Civil Liberties Union,
Amicus Curiae.

No. 86–7540.

United States Court of Appeals,
Fourth Circuit.

Argued July 16, 1986.

Decided Nov. 10, 1986.

Stanley B. Sprague (Central Carolina Legal Services, Inc., on brief) for appellants.

Lemuel W. Hinton and Clifton H. Duke, Asst. Attys. Gen., for appellees.

Gregory C. Malhoit, East Cent. Community Legal Services, on brief, for Amicus Curiae.

Before ERVIN and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

ERVIN, Circuit Judge:

Plaintiffs/appellants Leonard and Casselbury brought this action after each had been imprisoned under separate civil contempt orders for failure to pay child support. Plaintiffs claim that their due process rights were violated when defendants, Neely and Hammond, state trial court judges presiding over the contempt hearings, failed to appoint counsel for plaintiffs, who were indigent at the time. The district court dismissed the action on *Younger* abstention grounds. Finding that plaintiffs' claim, cognizable only in a habeas corpus application, has not been presented to the state courts pursuant to 28 U.S.C. § 2254, we reverse and remand the action to the district court with instructions that the court dismiss the action.

## I.

Leonard and Casselbury were held, in separate state court proceedings, to be in civil contempt for failure to pay child support in the sums of $2,898.00 and $2,894.17, respectively. At the hearings, the presiding state judges, Neely and Hammond, imposed the incarceration orders without: (1) inquiring as to plaintiffs' indigency status; (2) addressing whether counsel should be appointed; (3) notifying plaintiffs of their right to counsel; or (4) appointing counsel to represent plaintiffs. Both men were imprisoned for indefinite periods until child support payments were made.

On April 4, 1984, plaintiffs, while incarcerated under the contempt orders, filed this action, styled "Complaint and Habeas Corpus Petitions,"[1] alleging that their constitutional right to due process had been violated. They sought release from custody, preliminary and permanent injunctions against the imprisonment of plaintiffs in any nonsupport proceeding where counsel were not provided to the indigent plaintiffs, and a declaratory judgment that no indigent person be incarcerated in a nonsupport civil contempt hearing without appointment of counsel. Plaintiffs asserted that the requested relief was authorized by 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201, 2202. Shortly thereafter, plaintiff Casselbury was released from jail, and on April 12, 1984, an amended complaint was filed so stating. Also on April 12, a motion for temporary restraining order (TRO) and preliminary injunction was filed seeking Leonard's release from jail and enjoining any future contempt hearings for plaintiffs without appointed counsel.

On April 18, the lower court entered an order finding that the August 12 TRO and preliminary injunction motion sounded in habeas corpus, and thus, Leonard must exhaust his state court remedies pursuant to 28 U.S.C. § 2254(b). On April 27, Leonard withdrew the TRO and preliminary injunction motion, since he already had been released from jail.

Plaintiffs moved for summary judgment and defendants filed motions to dismiss and for summary judgment. Adopting the findings and recommendations of the magistrate, the district court granted defendants' motion to dismiss. Viewing plaintiffs' claim as one actionable under 42 U.S.C. § 1983, the court reasoned that it should abstain from deciding the constitutional claim under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). This appeal followed.

1. Although mentioned in the complaint, apparently plaintiffs never filed habeas corpus petitions.

## II.

At the outset, we find that plaintiffs' claim should not have been viewed as a § 1983 action. Their claim is cognizable only in habeas corpus. When plaintiffs filed this action, both were in prison. Their complaint, entitled "Complaint and Habeas Corpus Petitions," challenged the constitutionality of their confinement and sought their release. It matters not that habeas corpus petitions were never filed, and plaintiffs' pleadings sought relief pursuant to other authorities. If a state prisoner, in his complaint, is attacking the validity of his confinement and seeking release, habeas corpus is the *exclusive* remedy. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Preiser v. Rodriquez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The *Preiser* Court specifically stated that a prisoner "cannot bring a § 1983 action, even though the literal terms of § 1983 might seem to cover such a challenge." *Id.* at 489, 93 S.Ct. at 1836.[2]

Relying on *Preiser*, this court has consistently precluded plaintiffs from challenging their imprisonment guised as other actions. *See, e.g., Alexander v. Johnson*, 742 F.2d 117 (4th Cir.1984) (although complaint against imprisonment is cast in § 1983 terms, claim is remedial only in habeas corpus); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir.1983) (case to be considered in habeas when release sought); *Hamlin v. Warren*, 664 F.2d 29 (4th Cir. 1981) (although prisoner's complaint was confined to § 1983 claim and request for declaratory and injunctive relief, pleading was to be construed as one in habeas), *cert. denied*, 455 U.S. 911, 102 S.Ct. 1261, 71 L.Ed.2d 451 (1982). The significance in limiting plaintiffs' remedy solely to a writ of habeas corpus is the "concomitant requirement of exhausting state remedies." [3] *Wolff*, 418 U.S. at 554, 94 S.Ct. at 2973. This total exhaustion rule is rigorously enforced so that state courts are given the first opportunity to review claims of constitutional error. *See Rose v. Lundy*, 455 U.S. 509, 518–19, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).

Plaintiffs herein failed to exhaust their state remedies before seeking redress in federal court. They could have presented their claim and sought relief in state court pursuant to N.C.Gen.Stat. § 5A–22(b): N.C.Gen.Stat. § 1A–1, Rule 60(b) of the N.C.Rules of Civil Procedure; or Rules 21 and 23 of the N.C.Rules of Appellate Procedure (writs of certiorari and supersedeas).

**2.** Although *Preiser* involved a criminal prison term, its holding is equally applicable to imprisonment for civil contempt. As the *Preiser* court stated, the essence of habeas corpus is an attack upon the legality of physical confinement, whether that confinement is "by executive direction alone, or by order of a court, or even by private parties." *Preiser*, 411 U.S. at 484, 93 S.Ct. at 1833. Indeed, other courts have recognized that habeas relief is appropriate in civil actions. *See, e.g., Ridgway v. Baker*, 720 F.2d 1409 (5th Cir.1983) (writ of habeas corpus sought in nonsupport civil contempt imprisonment); *National Discount Corp. v. O'Mell*, 194 F.2d 452, 456 (6th Cir.1952) ("Although the writ of habeas corpus is usually sought and granted in cases involving imprisonment for crime, it is not restricted to such type of imprisonment. It is appropriate procedure in cases ... of a civil nature."). In addition, this court has previously recognized the availability of habeas relief in a contempt imprisonment case. *See Broughton v. North Carolina*, 717 F.2d 147 (4th Cir.1983) (criminal contempt for outburst during a civil trial), *cert. denied*, 466 U.S. 940, 104 S.Ct. 1917, 80 L.Ed.2d 464 (1984).

**3.** In a § 1983 action, plaintiff "need not first seek redress in a state forum." *Preiser*, 411 U.S. at 477, 93 S.Ct. at 1829. It is this distinction between § 1983 and habeas actions that underlies the rule limiting plaintiff's relief exclusively to habeas corpus. Consideration of federal-state comity would be circumvented by prisoners bringing § 1983 actions to attack their incarceration and to seek freedom. *Id.* at 489–91, 93 S.Ct. at 1836–37.

The underlying rationale of the [exhaustion] requirement is that "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation...."

*Patterson v. Leeke*, 556 F.2d 1168, 1170 (4th Cir.) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed.2d 761 (1950)), *cert. denied*, 434 U.S. 929, 98 S.Ct. 414, 54 L.Ed.2d 989 (1977).

■ Plaintiffs contend that it would be futile for them to raise the constitutional question in state court since the North Carolina Supreme Court has already ruled on the issue. In *Jolly v. Wright*, 300 N.C. 83, 265 S.E.2d 135 (1980), the court refused to recognize an automatic right to counsel for indigents in nonsupport civil contempt proceedings, reasoning that such cases generally do not involve numerous or complex issues.

> Since the nature of nonsupport civil contempt cases usually is not complex, due process does not require that counsel be automatically appointed for indigents in such cases; rather, the minimum requirements of due process are satisfied by evaluating the necessity of counsel on a case-by-case basis....

*Id.* at 94, 265 S.E.2d at 143 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 779, 93 S.Ct. 1756, 1758, 36 L.Ed.2d 656 (1973), for the proposition that whether due process requires an automatic or case-by-case approach to appointment of counsel depends on the type of proceedings under consideration).

We reject plaintiffs' contention that based on *Jolly*, it would be futile to require them to seek remedy in state court. First, applying the *Jolly* case-by-case approach to the instant facts, a state court may find plaintiffs entitled to appointment of counsel. Second, we are uncertain that the North Carolina Supreme Court would follow *Jolly* if asked by plaintiffs to recognize an automatic constitutional right to appointed counsel under the instant facts. Subsequent to the *Jolly* decision, the United States Supreme Court revisited the question of litigant's right to appointment of counsel. *See Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Although the Court applied a case-by-case approach to the *Lassiter* facts (parental termination proceedings), the Court recognized that a presumption that an indigent has a right to

appointed counsel arises when, if he loses, he may be deprived of his physical liberty. Arguably, such presumption is present in a North Carolina nonsupport civil contempt case. Accordingly, the North Carolina Supreme Court, if requested, may modify or reverse *Jolly* in order to comport with *Lassiter*.[4]

We disagree with plaintiffs' position that the state's high courts have been given the chance and refused to alter the *Jolly* decision. Although the Court of Appeals has upheld *Jolly* in cases decided subsequent to *Lassiter, see, e.g., Daugherty v. Daugherty*, 62 N.C.App. 318, 302 S.E.2d 664 (1983); *Hodges v. Hodges*, 64 N.C.App. 550, 307 S.E.2d 575 (1983), the court had no choice. The North Carolina Court of Appeals is without authority to reverse or modify precedent of the North Carolina Supreme Court. *See Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985). In addition, since *Lassiter* the North Carolina Supreme Court has not addressed the right to appointed counsel in a nonsupport civil contempt case. The court did consider the issue in a civil paternity proceeding. *See Wake County, ex rel. Carrington v. Townes*, 306 N.C. 333, 293 S.E.2d 95 (1982), *cert. denied*, 459 U.S. 1113, 103 S.Ct. 745, 74 L.Ed.2d 965 (1983). Although the court applied the *Jolly* case-by-case approach to the *Townes* facts, the risk of physical confinement was not involved therein. Indeed, the court, recognizing that due process presumptively requires appointed counsel for indigents whose physical confinement is a likely result, relied on *Lassiter* to conclude that the instant paternity proceeding lacked a sufficient threat to personal liberty, and thus a case-by-case determination was appropriate.

Our decision in the case at hand applies only the settled principles of exhaustion of state remedies. We express no view on how the North Carolina courts should resolve the underlying constitutional question.

**4.** As stated above, in determining whether due process requires appointment of counsel, the *Jolly* court focused primarily on the complexity of the proceeding. Arguably, *Lassiter* shifts that focus so that the cornerstone to the issue is the risk of physical confinement.

### III.

Next we must address what effect, if any, plaintiffs' releases from jail have on this habeas corpus action. The releases raise two possible issues: federal jurisdiction and mootness.

■ The federal habeas corpus statute requires that plaintiffs must be "in custody" when the application for habeas is filed. 28 U.S.C. § 2254; *see also Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). The facts herein show that both plaintiffs were in jail when the original complaint was filed. Thus, federal jurisdiction was established. *See* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4262, at 609 (1978) (hereinafter referred to as *Federal Practice and Procedure: Jurisdiction*). Plaintiffs' subsequent releases have no effect on that jurisdiction. "[O]nce the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Carafas*, 391 U.S. at 238, 88 S.Ct. at 1559 (quoted in *Kemplen v. Maryland*, 428 F.2d 169, 171 (4th Cir.1970)).

■ The question of mootness is separate and distinct from the jurisdictional issue. Establishing jurisdiction is a matter of satisfying the "in custody" statutory requirement. "In general a case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1208, 71 L.Ed.2d 353 (1982) (quoting *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980)). Two exceptions to the mootness doctrine have evolved: (1) "collateral consequences"; and (2) "capable of repetition,

yet evading review." *Carafas*, 391 U.S. at 237, 88 S.Ct. at 1559; *Murphy*, 455 U.S. at 482, 102 S.Ct. at 1183.

The "collateral consequences" exception was enunciated in *Carafas*, 391 U.S. 234, 88 S.Ct. 1556. The Court held that where a conviction results in collateral consequences sufficient to create " 'a substantial stake in the ... conviction which survives the satisfaction of the sentence,'" the habeas claim is not moot. *Id.* at 237, 88 S.Ct. at 1559 (quoting *Fiswick v. United States*, 329 U.S. 211, 222, 67 S.Ct. 224, 230, 91 L.Ed. 196 (1946)). This court has applied the exception on several occasions. *See, e.g., Broughton*, 717 F.2d at 148–49, *Kemplen*, 428 F.2d at 171.

The "capable of repetition, yet evading review" exception was first enunciated in *Southern Pacific Terminal v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). This doctrine has been applied to numerous factual situations, *see Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975), including habeas corpus claims. *See Broughton*, 717 F.2d at 149; *Rastelli v. Warden, Metropolitan Correctional Center*, 782 F.2d 17 (2d Cir. 1986); *Tyars v. Finner*, 709 F.2d 1274 (9th Cir.1983). Two elements are required to employ this exception:

(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.

*Weinstein*, 423 U.S. at 149, 96 S.Ct. at 348.

■ Applying the law on mootness to the facts of this case, it is clear that the "capable of repetition, yet evading review" exception applies. Although free now[5], plaintiffs have the substantial risk of again being held in civil contempt and incarcerated without appointed counsel, if they fail to

---

5. Although plaintiffs no longer seek release from custody, other relief is available by means of habeas.

The *Carafas* Court recognized that:
"[T]he [habeas corpus] statute does not limit the relief that may be granted to discharge of the applicant from physical custody. Its man-

date is broad with respect to the relief that may be granted. It provides that '[t]he court shall ... dispose of the matter as law and justice require.'"
*Carafas*, 391 U.S. at 239, 88 S.Ct. at 1560 (quoting 28 U.S.C. § 2243). Thus, plaintiffs may seek such other relief under this habeas action.

make child support payments. This probability and reasonable expectation that the controversy will recur involving plaintiffs, meet one of the two elements necessary to apply the exception. *See Murphy,* 455 U.S. at 482, 102 S.Ct. at 1183. The other element is also met by the facts presented herein. The controversy involved is "short run." Because civil contemnors generally remain in jail for brief time periods, the challenged actions "do not last long enough for complete judicial review of the controversies they engender." *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 126, 94 S.Ct. 1694, 1700, 40 L.Ed.2d 1 (1974). Thus, the habeas claim is not moot, as it presents a controversy "capable of repetition, yet evading review." [6] Accordingly, the issue herein is still a "live" one, with plaintiffs retaining interests in the outcome.

### IV.

In sum, we find that the core of plaintiffs' claim, though cast in § 1983 terms, is cognizable only in a habeas action. Notwithstanding plaintiffs' releases from custody subsequent to filing their claim, federal jurisdiction still exists and the controversy is not moot. Plaintiffs have failed to exhaust their state remedies pursuant to 28 U.S.C. § 2254(b). Accordingly, plaintiffs must first present their claims to the state courts before seeking federal review. *See Alexander v. Johnson,* 742 F.2d 117, 126 (4th Cir.1984).

■ Generally, when plaintiffs have failed to exhaust state remedies, the actions are dismissed, thereby forcing plaintiffs "to completely begin their quest for relief anew." *Grace v. Butterworth,* 635 F.2d 1, 10 (1st Cir.1980), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981); *see also Alexander,* 742 F.2d at

126–27. *Cf. Slayton v. Smith,* 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971); *Federal Practice and Procedure: Jurisdiction* § 4264, at 655 (1978).[7]

Therefore, we remand the action to the district court with instructions that it be dismissed.

REVERSED AND REMANDED WITH INSTRUCTIONS.

---

**6.** Because we find that the case is not moot based on the "capable of repetition, yet evading review" doctrine, we need not address whether plaintiffs also suffer from collateral consequences.

**7.** There is an exception to this rule when "special circumstances" make dismissal inappropriate. *See Nelson v. George,* 399 U.S. 224, 90 S.Ct.

1963, 26 L.Ed.2d 578 (1970) (under special circumstances, federal court can retain jurisdiction of the habeas corpus petition pending plaintiff's presentation of his claim to the state courts). However, the cases recognizing these "special circumstances" are all distinguishable from this case.