BENTON, J., concurring and dissenting.
Because I believe the statutes relating to jury costs and attorney fees fail to require consideration of an indigent’s ability to pay, thus violating the equal protection clause of the Fourteenth Amendment, I dissent from Part II of the opinion. I also disagree with the majority’s assertion in Part III that Ohree failed to argue in the trial court that her consent to a jury trial was involuntary. For these reasons, I would reverse Ohree’s convictions and remand the case to the trial judge for further proceedings.
Although I concur in Part I of the opinion, I believe it is important to note that Ohree’s first contention is not based upon her indigency. She initially contends that the statute which imposes the costs of providing a jury trial upon every convicted defendant unconstitutionally burdens a defendant’s right to a jury trial as provided in the United States Constitution. Although I disagree with the Commonwealth’s contention that Ohree lacks standing to raise this issue and I would hold that she does, I otherwise concur in Part I of the majority opinion.
*317 A.
I disagree with the majority’s holding that Ohree waived her argument that assessing court-related costs against an indigent criminal defendant violates the equal protection clause. After her indictment, Ohree was found to be indigent. Ohree’s court-appointed counsel filed a pretrial motion seeking a waiver of the fees for a jury and court-appointed attorney. The trial judge issued an opinion letter in which he denied the motion. At a later hearing, on June 13, Ohree’s counsel stated, “I filed a motion asking the Court to waive Court appointed fees and to waive jury fees, because she is an indigent person. We question the constitutionality of requiring a defendant once convicted to pay those costs.” (Emphasis added). Ohree’s counsel filed an objection to the trial judge’s ruling that denied the motion to waive jury and counsel fees. At the June 22 hearing, Ohree’s counsel again argued that the imposition of jury and counsel fees was unconstitutional. The trial judge noted that he had already overruled the objection.
The majority correctly notes that Ohree’s post-sentencing motion and objection to the assessed costs did not allege a constitutional violation and that the trial judge did not rule on this motion. However, Ohree made several pretrial motions objecting to the assessment of jury costs based on constitutional grounds and each was overruled by the trial judge. The trial judge had adequate notice of Ohree’s constitutional objection to application of the statute to her because she was indigent. Therefore, I would hold that Ohree did not waive her constitutional arguments and that we are not barred by Rule 5A:18 from considering the issue on appeal.
B.
I would also hold that Virginia’s statutory scheme for the imposition of the costs of providing a jury and court-appointed attorney violates the Fourteenth Amendment because it fails to give adequate consideration to the defendant’s ability to pay *318 and expressly authorizes the imposition of the obligation to repay upon certain indigent defendants.
While the Oregon statute at issue in Fuller v. Oregon stated that “ ‘[t]he court may require a convicted defendant to pay costs,’” 417 U.S. 40, 43 n. 5, 94 S.Ct. 2116, 2119 n. 5, 40 L.Ed.2d 642 (1974) (citation omitted), the statute imposed the following limitation:
“The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.”
Id. (citation omitted).
In construing the statute, the Supreme Court emphasized that “the requirement of repayment ‘is never mandatory.’ ” Id. at 44, 94 S.Ct. at 2120 (citation omitted). The Court noted that “before a person may be required to repay the costs of his legal defense,” the judge must consider the defendant’s financial resources and the burden the obligation will impose upon the defendant. Id. at 45, 94 S.Ct. at 2120-21. A judge cannot order the defendant to pay the costs unless the defendant “ ‘is or will be able to pay them.’ ” Id. (citation omitted). Thus, the Court concluded that under the Oregon statute, “[djefendants with no likelihood of having the means to repay are not put under even a conditional obligation to do so.” Id. at 46, 94 S.Ct. at 2121. Finally, the Court emphasized that a person who is initially ordered to pay the costs can petition the judge for remission of the costs. See id. at 45, 94 S.Ct. at 2120-21. The judge may forgive the obligation if “payment ‘will impose manifest hardship on the defendant or [the defendant’s] immediate family.’ ” Id. at 45-46, 94 S.Ct. at 2121 (citation omitted).
The Fourth Circuit applied Fuller in interpreting a North Carolina statutory recoupment scheme. See Alexander v. Johnson, 742 F.2d 117 (4th Cir.1984). In Alexander, the Court upheld the statute because it required the trial judge to *319 consider the convicted defendant’s resources when deciding whether to require repayment. See id. at 124-26; see also Olson v. James, 603 F.2d 150,155 (10th Cir.1979) (stating that the Kansas statute was inadequate in part due to “its lack of proceedings which would determine the financial condition of the accused and perhaps test the excessiveness of the attorney’s fee”); cf. United States v. Glover, 588 F.2d 876, 878-79 (2d Cir.1978) (holding that because the trial court has discretion to determine whether to impose costs and because “the defendant’s ability to pay will ... be a paramount factor ..., [the statute] does not impinge upon the right to stand trial”). But see United States v. Chavez, 627 F.2d 953, 957-58 (9th Cir.1980) (holding that a statute requiring imposition of costs even upon indigents was constitutionally valid).
Virginia’s statutory scheme, however, fails to meet the requirements of Fuller as explicated in Alexander. First, in Virginia, trial judges are required to impose an obligation to repay costs on every convicted defendant. Under Code § 19.2-336, the clerk of court is required to issue a statement of expenses. The statute further states that “execution for the amount of such expenses shall be issued and proceeded with.” Id. (emphasis added). Thus, when the trial judge initially imposes the repayment requirement, the judge must do so without regard to the defendant’s financial resources.
Even under Code §§ 19.2-354 and 19.2-355, which allow the trial judge to consider the defendant’s resources when deciding whether to require immediate payment, the defendant must ultimately be required to pay. Under those provisions, a defendant’s indigence would only allow the defendant additional time to fulfill the obligation. In addition, the trial judge “shall forthwith suspend the person’s privilege to drive a motor vehicle.” Code § 46.2-395. Thus, unlike the statutes in Fuller and Alexander, the Virginia scheme automatically and mandatorily imposes on every convicted, indigent defendant the obligation to repay the expenses of prosecution, including the costs of providing a jury and a court-appointed attorney.
*320 The majority asserts that the Virginia statutes are constitutional because under the recoupment statutes, the trial judge may allow the defendant additional time for payment, reduce the amount of payment, or remit the unpaid portion in whole or in part. However, unlike the statute in Fuller, the Virginia statutes do not allow a person who is initially ordered to pay costs to petition for remission of the costs. Nor do the statutes allow the judge to forgive the obligation in its entirety if it would impose “manifest hardship upon the defendant.”
The only statute that allows the trial judge to remit the unpaid portion of the amount due is Code § 19.2-358. Under this statute, the trial judge may initiate a show cause proceeding to determine whether to enforce the defendant’s obligation. The inquiry the judge must make does not specifically mandate consideration of the defendant’s ability to pay. Thus, Code § 19.2-358 is inadequate under Fuller because it does not suggest to the judge that a factor to consider is the defendant’s ability to pay. Because the statute provides standards to apply, the exclusion of any suggestion that the judge consider the defendant’s resources is even more damaging.
This initial defect is further exacerbated because the statute essentially imposes an obligation on the defendant to show that the defendant made an effort to obtain the funds. Indeed, if the defendant fails to do so, the trial judge “may” order the defendant confined. See Code § 19.2-358. Although the decision to jail the defendant is discretionary, the trial judge is barred from ordering the defendant imprisoned only if the defendant can show that the defendant did not intentionally refuse to pay and that the defendant made a good faith effort to obtain the funds. See id.
By requiring the defendant to show that he or she made a good faith effort to obtain funds to pay the costs, Code § 19.2-358 expressly authorizes trial judges to enforce the obligation to pay against some indigent defendants. That is, an indigent defendant who cannot prove a satisfactory effort to obtain the funds can be jailed under Code § 19.2-358. Thus, a defen *321 dant’s indigence is not enough, alone, to excuse him from the obligation to repay.[5]
The majority’s reliance on Wicks v. City of Charlottesville, 215 Va. 274, 208 S.E.2d 752 (1974), is misplaced. The applicable recoupment provision in effect at that time provided, in pertinent part, as follows:
If the defendant is convicted, the amount allowed by the court to the attorney appointed to defend him shall be taxed against the defendant as part of the costs of prosecution ____ An abstract of such costs shall be docketed in the judgment docket and execution lien book maintained by such court.
Code § 18.4-184.1 (1973). The obligation imposed on the defendant was in the nature of a civil judgment, enforceable through execution. See Wicks, 215 Va. at 279, 208 S.E.2d at 756-57; Code § 18.4-184.1 (1973); State v. Albert, 899 P.2d 103,110-11 (Alaska 1995) (discussing the statute in Wicks and stating that “[t]he amount so taxed was docketed as a judgment”). Unlike the statute discussed in Wicks, the current recoupment scheme does not treat indigent defendants just like other judgment debtors. Code § 19.2-336, and the sections of Chapter 21 to which it refers, provide for contempt proceedings that may result in imprisonment of the defendant, *322 revocation of the suspension of the defendant’s sentence, and suspension of the defendant’s driver’s license. Therefore, the holding in Wicks does not apply to the current recoupment scheme. See Albert, 899 P.2d at 109-11 (emphasizing the distinction between a system that merely “treats recoupment judgment debtors like other civil judgment debtors” and those that “give rise to contempt proceedings” or operate as a condition of probation).
Therefore, I would hold that Virginia’s statutory scheme unconstitutionally imposes the costs of a jury trial and court-appointed attorney upon indigent defendants, without any preliminary consideration of their ability to pay, in violation of the Fourteenth Amendment of the United States Constitution.
C.
I would also hold that Ohree preserved for appeal the issue whether she voluntarily waived a jury trial. Prior to trial, Ohree filed a motion for waiver of jury fees and court-appointed attorney fees. In the motion, she argued “[t]hat to require the defendant to pay a fee for a jury or counsel, in the event she is convicted, has a coercive effect on the exercising of her right to trial by jury.” After the trial judge denied her motion, Ohree objected to that ruling, stating that her reasons for the objection included “the chilling effect on her decision to exercise the right to jury.” In the June 13 hearing, defense counsel stated that Ohree originally was going to ask for a jury trial in this case but because of the judge’s ruling on the issue of waiver of the jury fee, “[s]he can’t afford a jury____ Lack of money is the problem.” At the June 22 hearing, defense counsel reiterated that “the requirement of a defendant to pay for a jury upon conviction ... has a chilling effect and as such any waiver of jury would not be valid.” The trial judge noted that he had already overruled these objections.
At the beginning of Ohree’s trial, defense counsel again objected to the assessment of fees for a jury and a court-appointed attorney. After the trial judge overruled the objection, Ohree pleaded not guilty to both charges. When the *323 judge asked Ohree whether she “wish[ed] to be tried by the Court or by a jury,” defense counsel interjected, “If I might, Your Honor, we’ve already made an objection to that. We’re agreeing to be tried by the Court.”
The trial judge had adequate notice of Ohree’s position that the trial judge’s denial of waiver of jury fees had a “chilling” and “coercive” effect on her decision to waive trial by jury. Therefore, I would hold that Ohree did not waive her argument that she involuntarily waived her right to a jury trial, and we are not barred by Rule 5A:18 from considering the issue on appeal.
D.
“Waivers of constitutional rights ... must be voluntary' [,] knowing, [and] intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.” Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). On brief, Ohree concedes that her waiver was knowing and intelligent. However, she argues that the waiver of a jury trial was not voluntary or “free from coercion.” She also relies upon the principle that “the record must indicate that the accused made a knowing, intelligent and voluntary waiver of the right to trial by jury.” Wright v. Commonwealth, 4 Va.App. 303, 306, 357 S.E.2d 547, 549 (1987).
The record shows that, initially, Ohree had planned to request a jury trial. However, once the trial judge overruled defense counsel’s motions to waive the assessment of fees based on Ohree’s indigence, Ohree agreed to a bench trial. Ohree notes in her brief that her decision was “compelled by poverty.” Clearly, the record establishes that Ohree waived her right to a jury trial solely because of her inability to pay the costs of a jury if she was found guilty. If the trial judge had ruled in Ohree’s favor on her motions to waive jury fees, she would not have waived her right to a jury trial. Because we must review Ohree’s waiver of her constitutional right to a jury trial with a presumption against such waiver, see Johnson *324 v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 1022-23, 82 L.Ed. 1461 (1938); Sisk v. Commonwealth, 3 Va.App. 459, 462, 350 S.E.2d 676, 678 (1986), I would hold that the evidence did not overcome this presumption and was insufficient to show that she voluntarily waived her right to a jury trial.
E.
The majority suggests in dicta that the various statutes may be rendered constitutional by reading into them a prohibition against a trial judge imposing sanctions if an indigent defendant is still indigent when the trial is concluded and the costs remain unpaid. However, no such prohibition existed when the trial judge denied Ohree’s motion. Ohree was required to elect whether to seek a jury trial after she had been informed that if she was convicted she would be required to pay the cost of the jury. Thus, this is not a case where the “statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so.” Fuller, 417 U.S. at 53, 94 S.Ct. at 2124 (footnote omitted). Ohree’s decision was made in the context of knowing that she would be required to pay substantial costs if she was convicted. Under those circumstances, her waiver of a jury was obtained through a species of coercion that rendered her choice involuntary.
For these reasons, I would reverse Ohree’s convictions and remand to the trial judge for a determination of Ohree’s ability to pay jury and attorney fees. If the judge finds that Ohree is unable to pay and is not likely to be able to pay in the future, the judge should grant Ohree’s motions because the statutes authorizing the imposition of those costs are unconstitutional as applied to defendants who are unable to pay. The trial judge then must allow Ohree to re-elect trial by judge or jury and hold a new trial. If the trial judge finds that Ohree is able to pay, Ohree’s motions should be denied but she should be permitted to re-elect trial by judge or jury after being notified that should she later be unable to pay the costs, she will not be required to do so.
I dissent.

. Although the enforcement provisions contained in the scheme upheld in Fuller are similar in some respects, the important distinction is that, in Fuller, the contempt tests were applied only to defendants who initially were found able to pay. See 417 U.S. at 43 n. 5, 94 S.Ct. at 2119 n. 5. Thus, the non-indigent Fuller defendant was required to show that, even though the defendant initially had the financial ability to make the payment, the defendant's failure to pay was not caused by the defendant’s failure to make a good faith effort to make the payment. See id. In Virginia, an indigent defendant is not similarly exempt and may be required to prove a good faith effort to obtain the funds. Applying the good faith test to an indigent requires the indigent to obtain funds the indigent never possessed, an obligation that did not exist under the statute in Fuller.
Moreover, even if the tried judge finds that a defendant’s "default is excusable," the trial judge may still order the defendant to pay on modified terms. Code § 19.2-358(C). Thus, the statute contains no mandatory requirement that an indigent defendant shall be allowed to forego repayment. Cf. Fuller, 417 U.S. at 45-46, 94 S.Ct. at 2121.