COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Senior Judge Cole
Argued at Richmond, Virginia


CARLA JEAN OHREE
                                        OPINION BY
v.   Record No. 2112-95-2          JUDGE MARVIN F. COLE
                                      JANUARY 13, 1998
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    George F. Tidey, Judge

        David P. Baugh for appellant.

        Eugene Murphy, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


     Tried by the court sitting without a jury, appellant, Carla

Jean Ohree, was convicted of two counts of grand larceny by

welfare fraud.  On appeal, Ohree argues that (1) the

Commonwealth's recoupment from a convicted defendant of the costs

incurred in providing a jury trial unconstitutionally burdens the

defendant's right to a jury trial as provided in the Constitution

of the United States, (2) the Commonwealth's recoupment from an

indigent defendant of the costs incurred in providing a jury and

court-appointed counsel, without a preliminary finding that the

defendant could or would likely be able to pay the costs,

violates the Constitution of the United States, (3) Ohree's

waiver of her right to a jury trial was involuntary because it

was made solely to avoid the imposition of jury costs, and (4)

requiring Ohree to pay a clerk's fee, Commonwealth's attorney

fee, recording fee, courthouse maintenance fee, drug enforcement

jurisdiction fee, and a fee for the Criminal Injuries Compensation Fund violates the due process and equal protection clauses of the Constitution of Virginia. Finding no error, we affirm Ohree's convictions.

Facts

Following Ohree's indictment upon two counts of grand larceny by welfare fraud, counsel was appointed to represent her. Before trial, appellant filed a "Motion for Waiver of Jury Fee and Court Appointed Attorney Fees for Indigent Defendant." In her motion, Ohree alleged that she was indigent, that she was "desirous of contesting the charge," but that she was "chilled in her decision as to whether to elect trial by judge or trial by jury by her inability to pay any fee for a jury should she be convicted." The trial court refused to waive the jury and court-appointed counsel fees. Ohree objected to the court's ruling.

At the beginning of Ohree's trial, defense counsel again raised his objection regarding the assessment of fees for a jury and a court-appointed attorney. After the trial court overruled the objection, Ohree pleaded not guilty to both charges. When the judge asked Ohree whether she "wish[ed] to be tried by the Court or by a jury," defense counsel interjected, "If I might, Your Honor, we've already made an objection to that. We're agreeing to be tried by the Court."

The Commonwealth presented evidence that the Aid to Families

2

of Dependent Children program had overpaid Ohree in the amount of $873. The evidence demonstrated that Ohree had also been overpaid $879 in food stamps. The judge found Ohree guilty of both charges and sentenced her to two jail terms of twelve months each. The sentences were suspended upon certain conditions, including that Ohree "pay and the Commonwealth recover costs in the total amount of $409.00."

Two days after the entry of the sentencing order, Ohree filed an "Objection to Assessment of Costs and Motion to Set Aside." Ohree alleged that she was indigent and without funds to pay the costs of $409 as required by the sentencing order. She argued that "some of the items listed as 'costs' are not directly related to the expense of her prosecution and function as an additional punishment in excess of that provided by statute." Ohree also filed a "Motion to Stay Imposition of Punishment, Costs and Restitution Pending Appeal." The trial court granted her motion to stay the imposition of punishment and the payment of costs pending the appeal. However, the record contains no ruling of the trial court upon Ohree's objection and motion to set aside the imposition of $409 in costs.

I.

Ohree first contends that by requiring her to pay the costs of a jury had she elected a jury trial and been convicted, the Commonwealth violated her constitutional right to a trial by a jury. Ohree, however, elected to waive a trial by jury, and no

3

costs associated with a jury trial were assessed against her.[1]

Code § 14.1-195.1 provides in part that "[e]very person summoned as a juror in a civil or criminal case shall be entitled to thirty dollars for each day of attendance upon the court for expenses of travel incident to jury service and other necessary and reasonable costs as the court may direct."  In criminal cases resulting in a conviction, the clerk is directed to "make up a statement of all the expenses incident to the prosecution, . . . and execution for the amount of such expenses shall be issued and proceeded with."  Code § 19.2-336.  Where a defendant has waived a trial by jury at least ten days before trial, but the Commonwealth or the court refuses to waive a jury, the expenses incident to the prosecution shall not include the cost of the jury.  See id.

"If [a] provision ha[s] no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it . . . [is] patently unconstitutional."  United States v. Jackson, 390 U.S. 570, 581 (1968).  However, "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid."  Doss v. Commonwealth, 23 Va.

_____

[1]We assume without deciding that appellant has standing to raise this issue.  But see Wicks v. City of Charlottesville, 215 Va. 274, 277-78, 208 S.E.2d 752, 755 (1974) (where defendant would reap no personal benefit from a ruling that a portion of an ordinance was unconstitutional, he has no standing to challenge the statute's validity as to others); Bouldin v. Commonwealth, 4 Va. App. 166, 169-70, 355 S.E.2d 352, 354 (1987).

4

App. 679, 688, 479 S.E.2d 92, 97 (1996) (quoting <u>Corbitt v. New Jersey</u>, 439 U.S. 212, 218 (1978)). For example, "there is no <u>per se</u> rule against encouraging guilty pleas." <u>Corbitt</u>, 239 U.S. at 218-19. A legislature, however, cannot needlessly encourage waivers. <u>See</u> <u>Jackson</u>, 390 U.S. at 582. "Whatever might be said of [the General Assembly's] objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive." <u>Id.</u> (citations omitted).

In <u>Wicks v. City of Charlottesville</u>, 215 Va. 274, 208 S.E.2d 752 (1974), the Supreme Court of Virginia described the purpose of the imposition of costs as follows:

> "[T]he character of the obligation . . . of a person convicted of [a] crime to the Commonwealth for the costs incident to his prosecution and conviction was discussed and defined to be an exaction, 'simply for the purpose of reimbursing to the public treasury the precise amount which the conduct of the defendant has rendered it necessary should be expended for the vindication of the public justice of the State and its violated laws. It is money paid, laid out and expended for the purpose of repairing the consequences of the defendant's wrong.'"

<u>Wicks</u>, 215 Va. at 278-79, 208 S.E.2d at 756 (quoting <u>Commonwealth v. McCue's Ex'rs</u>, 109 Va. 302, 304, 63 S.E. 1066, 1067 (1909)). "'Payment of costs is no part of the sentence of the court, and constitutes no part of the penalty or punishment prescribed for

5

the offense.'" Williams v. Commonwealth, 5 Va. App. 514, 521, 365 S.E.2d 340, 344 (1988) (citation omitted).

Had Ohree elected a jury trial and been convicted, permitting the Commonwealth to seek reimbursement for the expense of that jury trial would be a legitimate objective. See Rinaldi v. Yeager, 384 U.S. 305, 309 (1966) ("We may assume that [the] legislature could validly provide for replenishing . . . [the Commonwealth's] treasury from the pockets of those who have directly benefitted from [the Commonwealth's] expenditures."). Moreover, the objective of the Commonwealth — to reimburse the Commonwealth for its costs in providing a jury to a convicted defendant — cannot "be achieved without penalizing those defendants who . . . demand [a] jury trial." Jackson, 390 U.S. at 582.

We conclude that the imposition of the cost of providing a jury does not impose an excessive or unnecessary burden upon the exercise of the right of a jury trial under the United States Constitution. See Wicks, 215 Va. at 280, 208 S.E.2d at 757. Moreover, the Supreme Court of Virginia has held that a criminal defendant's constitutional rights are not violated by including in the expenses incident to the prosecution the cost of the jury if the defendant exercises his or her right to a jury trial. See Kincaid v. Commonwealth, 200 Va. 341, 344, 105 S.E.2d 846, 848 (1958).[2] Accordingly, we find no error in the trial court's

_____

[2]Despite Ohree's assertion that the Kincaid decision was improperly founded upon Anglea v. Commonwealth, 51 Va. (10

6

refusal to find that the jury fee was an unconstitutional burden upon Ohree's right to a jury trial.

## II.

Ohree argues on appeal that it "violates the equal protection clause and is constitutionally impermissible" to assess court-related costs against an indigent criminal defendant until the defendant's financial situation improves and he or she is able to make payment. Ohree's post-sentencing motion and objection to the $409 in costs contained no allegation of a constitutional violation. Rather, Ohree's motion asserted her inability to pay, challenged the costs as not directly related to the costs of her prosecution, and argued that the costs constituted a punishment in excess of that permitted by statute. Ohree did not argue in the trial court that the recoupment procedures permitted by Virginia statutes violated her constitutional rights. In fact, the record does not reflect that the trial judge made any ruling at all upon Ohree's objection to the assessed costs and the motion to set them aside.

"No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18.

Gratt.) 696, 701 (1853), this Court is without authority to overrule precedent of the Supreme Court. See Minor v. Commonwealth, 16 Va. App. 803, 805, 433 S.E.2d 39, 40 (1993).

> The main purpose of requiring timely specific
> objections is to afford the trial court an
> opportunity to rule intelligently on the
> issues presented, thus avoiding unnecessary
> appeals and reversals.  In addition, a
> specific, contemporaneous objection gives the
> opposing party the opportunity to meet the
> objection at that stage of the proceeding.

Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991) (citation omitted).

The Court of Appeals will not consider an argument on appeal which was not presented to the trial court.  See Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18).  Rule 5A:18 applies to bar even constitutional claims.  See Deal v. Commonwealth, 15 Va. App. 157, 161, 421 S.E.2d 897, 900 (1992).  Therefore, Ohree's argument on appeal is barred by Rule 5A:18 because it was not raised in the trial court.  Furthermore, because the trial court never ruled upon Ohree's objection to the imposition of costs and her motion to set the costs aside, there is no ruling for us to review on appeal.  See Fisher v. Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993).

Even on the merits, however, Ohree's claim fails.  If Virginia's statutory framework regarding the imposition of costs is subject to a constitutional construction "[t]he court is under a duty to give it that construction."  Perkins v.Commonwealth, 12 Va. App. 7, 14, 402 S.E.2d 229, 233 (1991) (citation omitted).  In Fuller v. Oregon, 417 U.S. 40 (1974), the Supreme Court of the United States upheld the validity of an Oregon statute permitting

8

the recoupment of a court-appointed attorney fee where a convicted defendant subsequently acquired the financial ability to pay. The Court noted that unlike invalid statutes which

> "had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them," Oregon's recoupment statute merely provides that a convicted person who later becomes able to pay for his counsel may be required to do so. Oregon's legislation is tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship.

Id. at 54 (citation omitted).

In Alexander v. Johnson, 742 F.2d 117, 124 (4th Cir. 1984), the United States Court of Appeals for the Fourth Circuit set forth the "basic features of a constitutionally acceptable fees reimbursement program . . . ." Under a valid recoupment program, the entity deciding whether to require repayment must take recognizance of the individual's resources, the other demands on his own and family's finances, and the hardships he or his family will endure if repayment is required. The purpose of this inquiry is to assure repayment is not required as long as he remains indigent.

Id. (interpreting North Carolina law).

In every criminal case in Virginia, the clerk of the circuit court in which the accused is found guilty shall, as soon as possible, make up a statement of all the expenses incident to the prosecution provided for by statute and executions for the amount of such expenses shall be issued and proceeded with. On the day of completing the statement, the effect is the same as a judgment in the court in favor of the Commonwealth against the accused. See Code § 19.2-336.

Code § 19.2-354 grants to the trial court the authority to order payment of costs in installments or upon other terms and conditions, such as community service. If the defendant is "unable" to make immediate payment of the costs, the court shall order him or her to pay them in deferred payments or installments. See Code § 19.2-354(A).

In determining whether the defendant is "unable" to make immediate payment and whether an installment plan should be crafted under Code § 19.2-354(A), the judge "may require such defendant to file a petition, under oath, with the court, upon a form provided by the court, setting forth the financial condition of the defendant." Code § 19.2-355(A). As a part of this petition, the defendant shall provide a proposed plan for the repayment of costs in installments or upon other conditions. See Code § 19.2-355(B).

Should the defendant later default in his or her obligation to make installment or deferred payment of costs, the judge,

10

either upon his or her own motion or upon the motion of the prosecuting attorney, may require the defendant "to show cause why he should not be confined in jail or fined for nonpayment." Code § 19.2-358(A). The defendant is given the opportunity to demonstrate that the default was "not attributable to an intentional refusal to obey the sentence of the court, or not attributable to a failure on his part to make a good faith effort to obtain the necessary funds for payment." Code § 19.2-358(B). If it appears that such reasons exist to explain the default, "the court may enter an order allowing the defendant additional time for payment, reducing the amount due or of each installment, or remitting the unpaid portion in whole or in part." Code § 19.2-358(C).

Although the trial court has jurisdiction to modify, vacate, or suspend its order of final judgment for only twenty-one days thereafter, see Rule 1:1, it retains the continuing authority to consider matters pertaining to a defendant's payment of costs. See Code §§ 19.2-354 and 19.2-358. Sections 19.2-354 and 19.2-358 contain no time limitation beyond which the trial court may not approve or enforce an agreement regarding payment of costs. The trial court possesses the implicit authority to reconsider and modify, upon its own motion or the motion of one of the parties involved, its order concerning the installment or deferred payment of costs. Cf. West v. Commonwealth, 16 Va. App. 679, 685-86, 432 S.E.2d 730, 734 (1993) (where the Commonwealth

11

both noted an interlocutory appeal of a ruling on a motion to suppress and asked the trial court to reconsider its decision, the trial court retained jurisdiction to reconsider its decision even in the absence of express statutory authority permitting the Commonwealth to ask for a reconsideration).  Therefore, a defendant who finds that his or her financial condition has prevented or will prevent him or her from complying with a deferral or installment plan ordered under Code § 19.2-354 may petition the trial court for a modification of its prior order embodying that plan.  Evidence relevant in the consideration of such a petition would include facts regarding the defendant's financial position and his or her ability to pay.

Consequently, a person convicted of a crime in the Commonwealth has ample opportunity to demonstrate that he or she should be relieved of the obligation to pay court related costs previously assessed.  The defendant can establish that he or she is "unable" to pay the costs within ten days of sentencing and obtain a court approved plan to make deferred or installment payments of the costs pursuant to Code § 19.2-354.  If that plan proves unworkable, the defendant may petition the trial court for a modification of the plan.  Finally, if the defendant defaults in payment and is ordered to show cause pursuant to Code § 19.2-358, he or she has the opportunity to present evidence concerning his or her ability to pay and obtain either temporary or permanent relief from the obligation to pay costs.  Thus,

12

Virginia's statutory scheme works to enforce the duty of paying costs "only against those who actually become able to meet [the responsibility] without hardship."  Fuller, 417 U.S. at 54.

The statutory grant of power to the trial court to order payment of fines, forfeitures, penalties, restitution and costs in deferred payments or installments according to the defendant's ability to pay implies that the trial judge will act with sound judicial discretion.  See Dowell v. Commonwealth, 6 Va. App. 225, 228, 367 S.E.2d 742, 744 (1988).  Imposing sanctions on a defendant who fails to pay costs "not attributable to an intentional refusal to obey the sentence of the court" or who is financially unable "to obtain the necessary funds for payment" would be unconstitutional under Fuller.  Consequently, imposition of any penalty on a defendant by a trial court under these conditions would constitute an abuse of discretion.

The Virginia Supreme Court has addressed recoupment of attorney fees from an indigent defendant.  The same principles apply to other costs of prosecution.

> It is entirely proper, and a constitutional requisite, that an indigent defendant be represented by court-appointed counsel.  However, we can perceive no valid reason why, if the defendant is convicted, the cost of such representation should not be taxed as a part of the cost of the prosecution, treated as any other debt and collected of the convicted defendant at a later date if and when he becomes able to pay.  The Code of Virginia abounds with statutes providing debtors, judgment and otherwise, with exemptions from execution, attachment, garnishment and distress.  These statutes afford equal treatment and are

13

> adequate to protect any debtor from hardship, and from oppression or overreaching by a creditor. They are not discriminatory and do not penalize any judgment debtor of the Commonwealth.

Wicks, 215 Va. at 279, 208 S.E.2d at 756-57 (citations omitted).

Under the Virginia recoupment statutes, the defendant is given the opportunity at any time to demonstrate that any default was not attributable to any refusal to make a good faith effort to obtain the funds necessary for payment. The trial court may allow the defendant additional time for payment, reduce the amount of the payments on each installment, or remit the unpaid portion in whole or in part. Thus, we find the recoupment statutes constitutional and not a violation of the due process or equal protection clauses of the United States Constitution.

In any event, although Ohree asserted in the trial court that she was indigent and counsel was appointed to represent her, the record contains no affirmative proof that she was unable to pay the costs, in whole or in part, at the time she was sentenced. The trial court stayed the requirement of the payment of costs pending Ohree's appeal. Accordingly, the record does not reflect that Ohree was determined "unable" to pay the costs pursuant to Code § 19.2-354, that an installment plan or other program was created for her to repay the debt, or that she sought relief from or defaulted upon such a plan. With the case in this posture, we cannot determine how the statutory scheme for recoupment of court-related costs might eventually affect Ohree,

14

much less find the procedure unconstitutional as applied to her.

### III.

Although prior to arraignment Ohree requested that the jury fee be waived and contended that the imposition of the jury fee "chilled" her decision regarding whether to request a jury, she never contended in the trial court, as she does on appeal, that her decision to waive a trial by jury was involuntary. Therefore, this issue was waived. See Rule 5A:18.

Moreover, "[t]he record must indicate that the accused made a knowing, intelligent and voluntary waiver of the right to trial by jury." Wright v. Commonwealth, 4 Va. App. 303, 306, 357 S.E.2d 547, 549 (1987). When asked if she wanted to be tried by the judge or a jury, Ohree consented specifically to a bench trial. As noted above, had Ohree chosen to be tried by a jury, the imposition of the cost of a jury would have been lawful. Ohree's understanding of the cost of a jury trial and her desire to avoid this expense did not constitute coercion rendering her waiver of a jury involuntary. Cf. Fuller, 417 U.S. at 53 ("The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel."). Accordingly, the record reflects a knowing and voluntary waiver of Ohree's right to a jury trial.

### IV.

Finally, Ohree argues that requiring her to pay a clerk's

15

fee, Commonwealth's attorney fee, recording fee, courthouse maintenance fee, drug enforcement jurisdiction fee, and a fee for the Criminal Injuries Compensation Fund violates the equal protection and due process clauses of the Constitution of Virginia.[3]  As described above, in the trial court Ohree challenged the imposition of costs solely upon grounds that the costs amounted to an additional punishment in excess of that provided by statute.  She raised no constitutional claim.  On brief, Ohree concedes that the only issue preserved was whether the costs were related to the prosecution.  Furthermore, the trial court never ruled upon the objection raised in Ohree's post-sentencing objection.  Thus, this claim, too, is waived. See Rule 5A:18.

Ohree argues that under Carter v. City of Norfolk, 206 Va. 872, 147 S.E.2d 139 (1966), any cost imposed upon her must be related to the expenses incurred by the Commonwealth in prosecuting her.  Ohree misconstrues Carter.  Addressing Carter's reliance upon decisions from other states that required costs to be related to the prosecution of the particular defendant charged, see id. at 877, 147 S.E.2d at 143, the Supreme Court stated:

> We need not decide whether the Constitution
> of Virginia would require the same result as

---

[3]These fees are authorized by Virginia statutes.  See Code § 14.1-112 (clerk's fee), § 14.1-121 (Commonwealth's attorney fee), § 14.1-133.2 (courthouse maintenance fee), § 14.1-134.1 (drug enforcement jurisdiction fee), § 19.2-165 (recording fee), and § 19.2-368.18 (Criminal Injuries Compensation Fund).

16

> was reached in [cases decided under the constitutions of other states] . . . if the statutes there involved were before us; nor should this opinion be interpreted as indicating approval or disapproval of the result reached in those cases.

Id. at 879 n.10, 149 S.E.2d at 144 n.10.  The Court declined to rule on that issue because it found that the cost Carter disputed, a charge for the cost of reporting the conviction to the Division of Motor Vehicles, was related to Carter's conviction.  See id. at 879, 149 S.E.2d at 144.

In any event, however, several of the fees challenged by Ohree were directly related to her conviction.  Ohree complains of six fees: a Commonwealth's attorney fee, a clerk's fee, a recording fee, a courthouse maintenance fee, a Criminal Injuries Compensation Fund fee, and a drug enforcement jurisdiction fee.[4]  When ruling on the "relatedness" of the fees charged in Carter, the Supreme Court noted that the court clerk was required to send Carter's conviction record to the Division of Motor Vehicles and that the Commissioner of the Division of Motor Vehicles was required to maintain the records once received.  See Carter, 206 Va. at 877-78, 149 S.E.2d at 143.  The Court concluded that

---

[4]Code § 14.1-134.1, which authorizes the drug enforcement jurisdiction fee, explicitly restricts application of that section to defendants convicted of drug-related offenses.  See id.  Because no evidence in the record proved that the Commonwealth assessed a drug enforcement jurisdiction fee in this welfare fraud case, we will not assume that the Commonwealth misapplied Code § 14.1-134.1 by charging Ohree for an expense under that section.  Therefore, we will not address her claim regarding the drug enforcement jurisdiction fee.

17

"[t]he record-keeping and reporting expenses of the Division of Motor Vehicles [we]re, therefore, directly related to convictions for traffic offenses."  Id. at 878, 149 S.E.2d at 144.

Similarly, we find that the prosecuting expenses of the Commonwealth, i.e., the Commonwealth's attorney's fee, the clerk's fee, and the recording fee, were directly related to Ohree's conviction.  Because Ohree was directly affected by the services provided by the Commonwealth's attorney, the court clerk, and the court reporter who recorded the proceedings, these expenses were related to Ohree's prosecution.

Ohree argues that the Commonwealth cannot assess a fee for services mandated by the Constitution, such as a Commonwealth's attorney fee, the clerk's fee, and the recording fee.  In Carter, the Supreme Court dismissed the argument "that costs cannot include items falling within the category of general expenses of the administration of justice," id. at 876 n.3, 149 S.E.2d at 142 n.3, finding no Virginia authority to support that position.  See id. at 876, 149 S.E.2d at 142.  The Court noted "that the Constitution of Virginia does not prohibit the assessment of jury costs against a convicted defendant."  Id. at 876 n.3, 149 S.E.2d at 142 n.3 (citing Kincaid, 200 Va. at 344, 105 S.E.2d at 848). The Court rejected Carter's claim that the Commonwealth was without authority to assess fees for the Commonwealth's attorney and the clerk.  See id. at 879, 149 S.E.2d at 144.  We are bound by the prior ruling of the Virginia Supreme Court.

18

In attacking the fee for the Criminal Injuries Compensation Fund (the Fund), Ohree argues that because the trial judge ordered her to pay restitution, no other compensation was due to the Commonwealth. We disagree. The Fund was created to provide "aid, care and support" to "innocent persons [who] suffer personal physical injury or death as a result of criminal acts." Code § 19.2-368.1. Although Ohree was convicted of no crime committed against an individual, the Commonwealth and its citizens were injured by her commission of two counts of welfare fraud.

Likewise, the General Assembly's purpose in charging a fee for courthouse maintenance was presumably to seek reimbursement for Ohree's use of the courthouse. An individual convicted of a crime against the Commonwealth can be said to have caused the Commonwealth to incur the expense of the prosecution of that individual. Therefore, the imposition of the courthouse maintenance fee upon Ohree, who was convicted of a crime, furthered the legislature's goal of reimbursement, and the fee was validly applied to Ohree.

For the foregoing reasons, we affirm appellant's convictions.

<u>Affirmed</u>.

Benton, J., concurring and dissenting.

Because I believe the statutes relating to jury costs and attorney fees fail to require consideration of an indigent's ability to pay, thus violating the equal protection clause of the Fourteenth Amendment, I dissent from Part II of the opinion. I also disagree with the majority's assertion in Part III that Ohree failed to argue in the trial court that her consent to a jury trial was involuntary. For these reasons, I would reverse Ohree's convictions and remand the case to the trial judge for further proceedings.

Although I concur in Part I of the opinion, I believe it is important to note that Ohree's first contention is not based upon her indigency. She initially contends that the statute which imposes the costs of providing a jury trial upon every convicted defendant unconstitutionally burdens a defendant's right to a jury trial as provided in the United States Constitution. Although I disagree with the Commonwealth's contention that Ohree lacks standing to raise this issue and I would hold that she does, I otherwise concur in Part I of the majority opinion.

A.

I disagree with the majority's holding that Ohree waived her argument that assessing court-related costs against an indigent criminal defendant violates the equal protection clause. After her indictment, Ohree was found to be indigent. Ohree's court-appointed counsel filed a pretrial motion seeking a waiver

20

of the fees for a jury and court-appointed attorney. The trial judge issued an opinion letter in which he denied the motion. At a later hearing, on June 13, Ohree's counsel stated, "I filed a motion asking the Court to waive Court appointed fees and to waive jury fees, <u>because she is an indigent person. We question the constitutionality of requiring a defendant once convicted to pay those costs</u>." (Emphasis added). Ohree's counsel filed an objection to the trial judge's ruling that denied the motion to waive jury and counsel fees. At the June 22 hearing, Ohree's counsel again argued that the imposition of jury and counsel fees was unconstitutional. The trial judge noted that he had already overruled the objection.

The majority correctly notes that Ohree's post-sentencing motion and objection to the assessed costs did not allege a constitutional violation and that the trial judge did not rule on this motion. However, Ohree made several pretrial motions objecting to the assessment of jury costs based on constitutional grounds and each was overruled by the trial judge. The trial judge had adequate notice of Ohree's constitutional objection to application of the statute to her because she was indigent. Therefore, I would hold that Ohree did not waive her constitutional arguments and that we are not barred by Rule 5A:18 from considering the issue on appeal.

B.

I would also hold that Virginia's statutory scheme for the

21

imposition of the costs of providing a jury and court-appointed attorney violates the Fourteenth Amendment because it fails to give adequate consideration to the defendant's ability to pay and expressly authorizes the imposition of the obligation to repay upon certain indigent defendants.

While the Oregon statute at issue in Fuller v. Oregon stated that "'[t]he court may require a convicted defendant to pay costs,'" 417 U.S. 40, 43 n.5 (1974) (citation omitted), the statute imposed the following limitation:

> "The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."

Id. (citation omitted).

In construing the statute, the Supreme Court emphasized that "the requirement of repayment 'is never mandatory.'" Id. at 44 (citation omitted). The Court noted that "before a person may be required to repay the costs of his legal defense," the judge must consider the defendant's financial resources and the burden the obligation will impose upon the defendant. Id. at 45. A judge cannot order the defendant to pay the costs unless the defendant "'is or will be able to pay them.'" Id. (citation omitted). Thus, the Court concluded that under the Oregon statute, "[d]efendants with no likelihood of having the means to repay are not put under even a conditional obligation to do so." Id. at

22

46. Finally, the Court emphasized that a person who is initially ordered to pay the costs can petition the judge for remission of the costs. See id. at 45. The judge may forgive the obligation if "payment 'will impose manifest hardship on the defendant or [the defendant's] immediate family.'" Id. at 45-46 (citation omitted).

The Fourth Circuit applied Fuller in interpreting a North Carolina statutory recoupment scheme. See Alexander v. Johnson, 742 F.2d 117 (4th Cir. 1984). In Alexander, the Court upheld the statute because it required the trial judge to consider the convicted defendant's resources when deciding whether to require repayment. See id. at 124-26; see also Olson v. James, 603 F.2d 150, 155 (10th Cir. 1979) (stating that the Kansas statute was inadequate in part due to "its lack of proceedings which would determine the financial condition of the accused and perhaps test the excessiveness of the attorney's fee"); cf. United States v. Glover, 588 F.2d 876, 878-79 (2d Cir. 1978) (holding that because the trial court has discretion to determine whether to impose costs and because "the defendant's ability to pay will . . . be a paramount factor . . . , [the statute] does not impinge upon the right to stand trial"). But see United States v. Chavez, 627 F.2d 953, 957-58 (9th Cir. 1980) (holding that a statute requiring imposition of costs even upon indigents was constitutionally valid).

Virginia's statutory scheme, however, fails to meet the

23

requirements of <u>Fuller</u> as explicated in <u>Alexander</u>. First, in Virginia, trial judges are <u>required</u> to impose an obligation to repay costs on every convicted defendant. Under Code § 19.2-336, the clerk of court is required to issue a statement of expenses. The statute further states that "execution for the amount of such expenses <u>shall</u> be issued and proceeded with." <u>Id.</u> (emphasis added). Thus, when the trial judge initially imposes the repayment requirement, the judge must do so without regard to the defendant's financial resources.

Even under Code §§ 19.2-354 and 19.2-355, which allow the trial judge to consider the defendant's resources when deciding whether to require immediate payment, the defendant must ultimately be required to pay. Under those provisions, a defendant's indigence would only allow the defendant additional time to fulfill the obligation. In addition, the trial judge "shall forthwith suspend the person's privilege to drive a motor vehicle." Code § 46.2-395. Thus, unlike the statutes in <u>Fuller</u> and <u>Alexander</u>, the Virginia scheme automatically and mandatorily imposes on every convicted, indigent defendant the obligation to repay the expenses of prosecution, including the costs of providing a jury and a court-appointed attorney.

The majority asserts that the Virginia statutes are constitutional because under the recoupment statutes, the trial judge may allow the defendant additional time for payment, reduce the amount of payment, or remit the unpaid portion in whole or in

24

part.  However, unlike the statute in <u>Fuller</u>, the Virginia statutes do not allow a person who is initially ordered to pay costs to petition for remission of the costs.  Nor do the statutes allow the judge to forgive the obligation in its entirety if it would impose "manifest hardship upon the defendant."

The only statute that allows the trial judge to remit the unpaid portion of the amount due is Code § 19.2-358.  Under this statute, the trial judge may initiate a show cause proceeding to determine whether to enforce the defendant's obligation.  The inquiry the judge must make does not specifically mandate consideration of the defendant's ability to pay.  Thus, Code § 19.2-358 is inadequate under <u>Fuller</u> because it does not suggest to the judge that a factor to consider is the defendant's ability to pay.  Because the statute provides standards to apply, the exclusion of any suggestion that the judge consider the defendant's resources is even more damaging.

This initial defect is further exacerbated because the statute essentially imposes an obligation on the defendant to show that the defendant made an effort to obtain the funds.  Indeed, if the defendant fails to do so, the trial judge "may" order the defendant confined.  <u>See</u> Code § 19.2-358.  Although the decision to jail the defendant is discretionary, the trial judge is barred from ordering the defendant imprisoned only if the defendant can show that the defendant did not intentionally

25

refuse to pay and that the defendant made a good faith effort to obtain the funds.  See id.

By requiring the defendant to show that he or she made a good faith effort to obtain funds to pay the costs, Code § 19.2-358 expressly authorizes trial judges to enforce the obligation to pay against some indigent defendants.  That is, an indigent defendant who cannot prove a satisfactory effort to obtain the funds can be jailed under Code § 19.2-358.  Thus, a defendant's indigence is not enough, alone, to excuse him from the obligation to repay.[5]

The majority's reliance on Wicks v. City of Charlottesville, 215 Va. 274, 208 S.E.2d 752 (1974), is misplaced.  The applicable recoupment provision in effect at that time provided, in pertinent part, as follows:
>     If the defendant is convicted, the amount

---

[5]Although the enforcement provisions contained in the scheme upheld in Fuller are similar in some respects, the important distinction is that, in Fuller, the contempt tests were applied only to defendants who initially were found able to pay.  See 417 U.S. at 43 n.5.  Thus, the non-indigent Fuller defendant was required to show that, even though the defendant initially had the financial ability to make the payment, the defendant's failure to pay was not caused by the defendant's failure to make a good faith effort to make the payment.  See id.  In Virginia, an indigent defendant is not similarly exempt and may be required to prove a good faith effort to obtain the funds.  Applying the good faith test to an indigent requires the indigent to obtain funds the indigent never possessed, an obligation that did not exist under the statute in Fuller.

Moreover, even if the trial judge finds that a defendant's "default is excusable," the trial judge may still order the defendant to pay on modified terms.  Code § 19.2-358(C).  Thus, the statute contains no mandatory requirement that an indigent defendant shall be allowed to forego repayment.  Cf. Fuller, 417 U.S. at 45-46.

26

> allowed by the court to the attorney
> appointed to defend him shall be taxed
> against the defendant as part of the costs of
> prosecution . . . .  An abstract of such
> costs shall be docketed in the judgment
> docket and execution lien book maintained by
> such court.

Code § 18.4-184.1 (1973).  The obligation imposed on the defendant was in the nature of a civil judgment, enforceable through execution.  See Wicks, 215 Va. at 279, 208 S.E.2d at 756-57; Code § 18.4-184.1 (1973); State v. Albert, 899 P.2d 103, 110-11 (Alaska 1995) (discussing the statute in Wicks and stating that "[t]he amount so taxed was docketed as a judgment").  Unlike the statute discussed in Wicks, the current recoupment scheme does not treat indigent defendants just like other judgment debtors.  Code § 19.2-336, and the sections of Chapter 21 to which it refers, provide for contempt proceedings that may result in imprisonment of the defendant, revocation of the suspension of the defendant's sentence, and suspension of the defendant's driver's license.  Therefore, the holding in Wicks does not apply to the current recoupment scheme.  See Albert, 899 P.2d at 109-11 (emphasizing the distinction between a system that merely "treats recoupment judgment debtors like other civil judgment debtors" and those that "give rise to contempt proceedings" or operate as a condition of probation).

Therefore, I would hold that Virginia's statutory scheme unconstitutionally imposes the costs of a jury trial and court-appointed attorney upon indigent defendants, without any

27

preliminary consideration of their ability to pay, in violation of the Fourteenth Amendment of the United States Constitution.

C.

I would also hold that Ohree preserved for appeal the issue whether she voluntarily waived a jury trial. Prior to trial, Ohree filed a motion for waiver of jury fees and court-appointed attorney fees. In the motion, she argued "[t]hat to require the defendant to pay a fee for a jury or counsel, in the event she is convicted, has a coercive effect on the exercising of her right to trial by jury." After the trial judge denied her motion, Ohree objected to that ruling, stating that her reasons for the objection included "the chilling effect on her decision to exercise the right to jury." In the June 13 hearing, defense counsel stated that Ohree originally was going to ask for a jury trial in this case but because of the judge's ruling on the issue of waiver of the jury fee, "[s]he can't afford a jury. . . . Lack of money is the problem." At the June 22 hearing, defense counsel reiterated that "the requirement of a defendant to pay for a jury upon conviction . . . has a chilling effect and as such any waiver of jury would not be valid." The trial judge noted that he had already overruled these objections.

At the beginning of Ohree's trial, defense counsel again objected to the assessment of fees for a jury and a court-appointed attorney. After the trial judge overruled the objection, Ohree pleaded not guilty to both charges. When the

28

judge asked Ohree whether she "wish[ed] to be tried by the Court or by a jury," defense counsel interjected, "If I might, Your Honor, we've already made an objection to that. We're agreeing to be tried by the Court."

The trial judge had adequate notice of Ohree's position that the trial judge's denial of waiver of jury fees had a "chilling" and "coercive" effect on her decision to waive trial by jury. Therefore, I would hold that Ohree did not waive her argument that she involuntarily waived her right to a jury trial, and we are not barred by Rule 5A:18 from considering the issue on appeal.

### D.

"Waivers of constitutional rights . . . must be voluntary [,] knowing, [and] intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). On brief, Ohree concedes that her waiver was knowing and intelligent. However, she argues that the waiver of a jury trial was not voluntary or "free from coercion." She also relies upon the principle that "the record must indicate that the accused made a knowing, intelligent and voluntary waiver of the right to trial by jury." Wright v. Commonwealth, 4 Va. App. 303, 306, 357 S.E.2d 547, 549 (1987).

The record shows that, initially, Ohree had planned to request a jury trial. However, once the trial judge overruled

29

defense counsel's motions to waive the assessment of fees based on Ohree's indigence, Ohree agreed to a bench trial. Ohree notes in her brief that her decision was "compelled by poverty." Clearly, the record establishes that Ohree waived her right to a jury trial solely because of her inability to pay the costs of a jury if she was found guilty. If the trial judge had ruled in Ohree's favor on her motions to waive jury fees, she would not have waived her right to a jury trial. Because we must review Ohree's waiver of her constitutional right to a jury trial with a presumption against such waiver, see Johnson v. Zerbst, 304 U.S. 458, 463 (1938); Sisk v. Commonwealth, 3 Va. App. 459, 462, 350 S.E.2d 676, 678 (1986), I would hold that the evidence did not overcome this presumption and was insufficient to show that she voluntarily waived her right to a jury trial.

E.

The majority suggests in dicta that the various statutes may be rendered constitutional by reading into them a prohibition against a trial judge imposing sanctions if an indigent defendant is still indigent when the trial is concluded and the costs remain unpaid. However, no such prohibition existed when the trial judge denied Ohree's motion. Ohree was required to elect whether to seek a jury trial after she had been informed that if she was convicted she would be required to pay the cost of the jury. Thus, this is not a case where the "statute is carefully designed to insure that only those who actually become capable of

30

repaying the State will ever be obliged to do so." Fuller, 417 U.S. at 53 (footnote omitted). Ohree's decision was made in the context of knowing that she would be required to pay substantial costs if she was convicted. Under those circumstances, her waiver of a jury was obtained through a species of coercion that rendered her choice involuntary.

For these reasons, I would reverse Ohree's convictions and remand to the trial judge for a determination of Ohree's ability to pay jury and attorney fees. If the judge finds that Ohree is unable to pay and is not likely to be able to pay in the future, the judge should grant Ohree's motions because the statutes authorizing the imposition of those costs are unconstitutional as applied to defendants who are unable to pay. The trial judge then must allow Ohree to re-elect trial by judge or jury and hold a new trial. If the trial judge finds that Ohree is able to pay, Ohree's motions should be denied but she should be permitted to re-elect trial by judge or jury after being notified that should she later be unable to pay the costs, she will not be required to do so.

I dissent.